## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MIGUEL ANGEL GARZA-
GUERRA,                          :

                                 :     CIVIL ACTION NO. 3:24-740
             Plaintiff

                                 :
      v.                               (JUDGE MANNION)

                                 :     FILED
UNITED STATES OF                       SCRANTON
AMERICA,                         :
                                       FEB 18 2025
             Defendant           :
                                       PER____ JKC ____
                                       DEPUTY CLERK

## MEMORANDUM

Currently before the Court are *pro se* Plaintiff Miguel Angel Garza-

Guerra ("Garza-Guerra")'s application for leave to proceed *in forma pauperis*

("IFP Application"), complaint, motion to expedite and for service of the

complaint, and two (2) motions for leave to file an amended complaint in this

civil action in which he raises claims under the Federal Tort Claims Act, 28

U.S.C. §1346 ("FTCA"), because the Federal Bureau of Prisons ("BOP")

allegedly unlawfully refused to apply time credits he had earned under the

First Step Act ("FSA"), resulting in him being detained at Federal Correctional

Institution Allenwood Low ("FCI Allenwood Low") for a year beyond his

maximum sentence. For the reasons stated below, the Court will (1) grant

the IFP Application, (2) deny as moot the motions for leave to amend

because Garza-Guerra did not require leave of Court to file a first amended

complaint, (3) direct the Clerk of Court to docket Garza-Guerra's proposed amended complaint as his amended complaint, (4) dismiss with prejudice the amended complaint on collateral estoppel grounds because this Court previously rejected the precise claim Garza-Guerra is raising here—failure to apply earned FSA time credits resulting in his overdetention—in a petition for a writ of habeas corpus under 28 U.S.C. §2241, and (5) deny as moot the motion to expedite and for service of the complaint.

## I.    BACKGROUND

### A.    Garza-Guerra's Conviction and Sentence

On April 23, 2015, Garza-Guerra pleaded guilty to conspiracy to distribute and possess with intent to distribute methamphetamine (21 U.S.C. §846) in the United States District Court for the Eastern District of Texas. *See* (Docs. 1 ¶6; 6-1 ¶17); Order Adopting United States Magistrate Judge's Rep. at 1, *United States v. Garza-Guerra*, No. 4:13-cr-14-8 (E.D. Tex.), ECF No. 461. On December 30, 2015, Garza-Guerra was sentenced to one-hundred-thirty-five (135) months' imprisonment, to be followed by a year of supervised release. *See* (Docs. 1 ¶6; 6-1 ¶17); J. at 2–3, *United States v. Garza-Guerra*, No. 4:13-cr-14-8 (E.D. Tex.), ECF No. 596. Although Garza-Guerra appealed from his sentence to the Fifth Circuit Court of Appeals, he

later voluntarily dismissed the appeal. *See* Mandate, *United States v. Garza-Guerra*, No. 4:13-cr-14-8 (E.D. Tex.), ECF No. 596.

### B.    Garza-Guerra's Prior Petition for a Writ of Habeas Corpus Under 28 U.S.C. §2241

Garza-Guerra filed a petition for a writ of habeas corpus under 28 U.S.C. §2241, which the Clerk of Court docketed on March 14, 2023. *See* Pet., *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 1. In his Section 2241 petition, Garza-Guerra sought "an order from the Court directing his immediate early transfer to supervised release from FCC Allenwood . . . based on his calculation of the credits he has earned under the [FSA], which . . . would have caused his release since September 19, 2022." *Id.* at 1. He claimed to have earned a year's worth of FSA time credits, and he generally asserted that the BOP had "arbitrarily, capriciously, and willfully refused to apply earned time credits [("ETCs")] to prisoners who have voluntary [Immigration and Customs Enforcement ("ICE")] detainers because of their nationality." *Id.*

In its response to Garza-Guerra's Section 2241 petition, Respondent argued that the Court should deny the petition because Garza-Guerra had "an active detainer lodged against him by the Department of Homeland Security [("DHS")], evidencing that he is subject to a final order o[f] removal or deportation." Resp. to Pet. for Writ of Habeas Corpus at 1, *Garza-Guerra*

*v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 6. In support of this argument, Respondent attached a Declaration from a supervising attorney with the BOP and a copy of DHS's immigration detainer that noted Garza-Guerra's final order of removal or deportation. *See* Decl. of Jennifer Knepper at 2, 8, *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 6-1.

Garza-Guerra then filed a traverse in which he generally argued that the FSA did not permit the BOP to refuse to apply a prisoner's FSA ETCs because they have an immigration detainer. *See* Traverse at 1, *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 7. After considering the traverse and the parties' other filings, this Court issued a Memorandum and Order on May 16, 2023, denying Garza-Guerra's Section 2241 petition. *See Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF Nos. 8, 9. In denying the petition, the Court explained that federal inmates are ineligible to apply FSA ETCs if they are "the subject of a final order of removal under any provision of the immigration laws." Mem. at 3, *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 8 (citing 18 U.S.C. §3632(d)(4)(E)). Because Respondent "presented evidence that [Garza-Guerra] is subject to a deportation order," the Court concluded that

the BOP "properly determined that [he was] not eligible for application of FSA time credits." *Id.* at 4 (citations omitted).

Following the denial of his habeas petition, Garza-Guerra filed a motion for reconsideration in which he contended, *inter alia*, that the Court's denial was in error because Respondent had failed to produce a copy of his actual final order of removal and, as such, this was "prima facie evidence that no such order exist[ed]." Mot. for Recons. at 1, *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 10. He also requested that if a final order of removal exists, the Court should compel Respondent to produce it because it "is the only valid evidence that could justify the denial of [ETCs] for a prisoner." *Id.* at 2.

Respondent filed a response in opposition to the motion for reconsideration, and Garza-Guerra filed a reply in further support of his motion. *See Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF Nos. 12, 13. The Court then issued an Order on June 26, 2023, directing Respondent to provide the Court with Garza-Guerra's correct Alien Number and a copy of his final order of removal. *See* Order, *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 14. Respondent timely responded to the Court's order by providing Garza-Guerra's Alien Number and a copy of his final order of removal on June 28, 2023. *See Garza-Guerra*

- 5 -

*v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 15. Garza-Guerra then filed a surreply in which he argued, *inter alia*, that the final order of removal provided by Respondent was not his actual final order of removal because, among other things, it did not match "an *exemplar* . . . final order of removal as contemplated by 18 U.S.C. §3632(d)(4)(E)(ii)." *See* Surreply at 1, *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 16.

After reviewing the parties' submissions, this Court entered an Order on August 21, 2023, denying Garza-Guerra's motion for reconsideration. *See* Order, *Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 17. Garza-Guerra then filed a notice of appeal to the Third Circuit Court of Appeals, which the Third Circuit dismissed on December 19, 2023, due to Garza-Guerra's failure to pay the filing fee as directed. *See Garza-Guerra v. Thompson*, No. 3:23-cv-445 (M.D. Pa.), ECF No. 22. Although Garza-Guerra sought to have the Third Circuit reinstate/reopen his appeal, the Third Circuit declined to do so via an Order entered on February 7, 2024. *See Garza-Guerra v. Warden Allenwood FCI*, No. 23-2581 (3d Cir.), ECF Nos. 8, 13.[1] Garza-Guerra then filed a motion to have the Third Circuit reconsider the denial of his motion to reinstate/reopen his appeal, which the Third Circuit

---

[1] The Court takes judicial notice of the docket entries in this appeal.

denied on April 19, 2024. *See Garza-Guerra v. Warden Allenwood FCI*, No. 23-251 (3d Cir.), ECF No. 16.

**C.   The Proceedings in the Present Case**

Garza-Guerra, who alleges that he is currently residing in Mexico, commenced the instant action by filing a complaint and an IFP Application, both of which the Clerk of Court docketed on May 2, 2024. (Docs. 1, 2.) In the complaint, Garza-Guerra asserts state-law false imprisonment and negligence claims against Defendant United States of America (the "Government") under the FTCA based on his general allegation that he was unlawfully detained at FCI Allenwood Low beyond his maximum sentence. (Doc. 1 at 1–4.) For relief, Garza-Guerra primarily requests monetary damages. (*Id.* at 4.)

On May 20, 2024, Garza-Guerra filed two (2) motions for leave to file an amended complaint. (Docs. 5, 6.) The first motion contains an attached proposed amended complaint without any exhibits. (Doc. 5.) The second motion contains an attached proposed amended complaint (albeit with misnumbered paragraphs) with various exhibits. (Doc. 6.) In both motions, Garza-Guerra states that he is seeking leave to amend his complaint "to correct and provide additional factual details and legal arguments that have come to light following further review of the case and applicable statutes."

(Docs. 5 at 1; 6 at 1.) Garza-Guerra also seeks to continue asserting FTCA claims for false imprisonment and negligence based on his allegedly unlawful overdetention while incarcerated at FCI Allenwood Low. (Docs. 5 at 3–9; 6-1 at 1–7.) On January 27, 2025, Garza-Guerra filed a motion to expedite and for service of the complaint. (Doc. 7.)

## II.    LEGAL STANDARDS

### A.    Applications for Leave to Proceed *in Forma Pauperis*

Under 28 U.S.C. §1915(a)(1), a district court "may authorize the commencement . . . of any [civil] suit, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[2] *Id.* This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [*Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, §1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among

---

[2] "The reference to prisoners in §1915(a)(1) appears to be a mistake. *In forma pauperis status* is afforded to all indigent persons, not just prisoners." *Douris v. Middletown Twp.*, 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

> other things, that [they are] unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris*, 293 F. App'x at 131–32.

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence." *Deutsch*, 67 F.3d at 1084 n.5. The Third Circuit has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'" *Mauro v. N.J. Supreme Ct., Case No. 56,900*, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of litigation and provide themselves with the necessities of life. *See, e.g.*, *Rewolinski v. Morgan*, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of [their] poverty, provide [themselves] and any dependents with the necessities of life is sufficient."); *Jones v. State*, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

**B.    Screening Complaints Under 28 U.S.C. §§1915A and 1915(e)(2)**

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If such a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1). The Court has a similar screening obligation regarding actions filed by individuals proceeding *in forma pauperis*. *See id.* §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2)(B), the Court applies the standard governing motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) [and] §1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to Section

- 10 -

1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court will not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2)(B). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle*

*v. Gamble*, 429 U.S. 97, 106 (1976); *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). Moreover, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). However, *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

## III.    DISCUSSION

### A.    The IFP Application

After reviewing the IFP Application, it appears that Garza-Guerra lacks the financial means to prepay the filing fee in this matter. Therefore, the Court will grant the IFP Application and allow Garza-Guerra to proceed *in forma pauperis* in this action.

**B.    The Motions to Amend the Complaint**

Preliminarily, the Court notes that Garza-Guerra's motions to amend his complaint could be deemed withdrawn under the Local Rules because he did not file a brief in support of the motions. *See* M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. . . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."). However, the Court will not do so here because Garza-Guerra did not need to file motions to file a first amended complaint. Instead, he had the right to an amended complaint without leave of court because his original complaint had not been sent for service yet. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."). Accordingly, the Court will deny the motions to amend as moot and direct the Clerk of Court to docket the amended complaint attached to his second motion to amend, as his amended complaint. The Court will now screen the amended complaint.

**C.    Screening of the Amended Complaint**

**1.    Allegations and Claims in the Amended Complaint**

In the amended complaint, Garza-Guerra alleges that after pleading guilty to conspiracy to distribute and possess with intent to distribute methamphetamine, he was sentenced to one-hundred-thirty-five (135) months' imprisonment in the United States District Court for the Eastern District of Texas on April 21, 2015. (Doc. 6-1 at 2.) His calculated release date, accounting for good time credits and a year's worth of FSA ETCs, was September 19, 2022. (*Id.*) Nevertheless, he remained incarcerated at FCI Allenwood Low until September 22, 2023. (*Id.* at 3.)

Garza-Guerra "repeatedly requested the basis and documentation supporting his continued detention; however, no documentation could justify the decision to confine him beyond September 22, 2022." (*Id.*) Apparently, Garza-Guerra's continued detention was based on an immigration detainer, which the BOP incorrectly interpreted as a final order of removal. (*Id.*) In addition, the BOP continued to detain Garza-Guerra despite never obtaining a copy of a final order of removal, as required by the applicable regulations and the BOP's Program Statement. (*Id.*) Garza-Guerra also avers that he was "never accorded due process as required under 8 CFR [sic]

- 14 -

§238.1(b)(2)(i), including the service of a Notice of Intent to Seek a Removal Order, a prerequisite for a valid deportation order." (*Id.*)

Based on these factual allegations, Garza-Guerra asserts state-law causes of action under the FTCA for false imprisonment and negligence against the Government. (*Id.* at 5–6.) He alleges that due to his unlawful detention, he "suffered from anxiety, depression, and physical ailments due to the conditions of confinement and uncertainty about his release, necessitating medical intervention which [was] difficult to obtain under the custody of the [BOP]." (*Id.* at 3.) For relief, he mainly seeks compensatory damages. (*Id.* at 6.)

### 2.    Analysis

Garza-Guerra raises his state-law tort claims of false imprisonment and negligence through the FTCA, which is the "proper vehicle for litigating tort claims against federal prison officials." *Landis v. Ebbert*, No. 22-1265, 2022 WL 17496012, at *1 n.2 (3d Cir. Dec. 8, 2022) (unpublished); *see also In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 362 (3d Cir. 2001) (explaining that the FTCA "does not itself create a substantive cause of action against the [Government]; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal

court"). The FTCA acts as a waiver of the Government's sovereign immunity

for suits against it,

> for injury[,] . . . caused by the negligent or wrongful act or
> omission of any employee of the Government while acting within
> the scope of [their] office or employment, under circumstances
> where the [Government] if a private person, would be liable to
> the claimant in accordance with the law of the place where the
> act or omission occurred.

28 U.S.C. §1346(b)(1). Essentially, the FTCA renders the Government

"liable to the same extent as a private party for certain torts committed by

federal employees acting within the scope of their employment." *United*

*States v. Orleans*, 425 U.S. 807, 813 (1976). As for those torts, "[t]he FTCA

only waives sovereign immunity for torts recognized under the law of the

state in which the conduct was alleged to have occurred." *Rinaldi v. United*

*States*, 904 F.3d 257, 272 n.15 (3d Cir. 2018); *see also F.D.I.C. v. Meyer*,

510 U.S. 471, 478 (1994) (explaining that the "law of the State" is "the source

of substantive liability under the FTCA").

A plaintiff presenting a FTCA claim must also comply with its

jurisdictional requirements, which are contained in 28 U.S.C. §2675(a),

before filing the claim in federal court. Section 2675(a) provides that "[a]n

action shall not be instituted upon a claim against the [Government] . . .

unless the claimant shall have first presented the claim to the appropriate

Federal agency and [their] claim shall have been finally denied by the

agency." 28 U.S.C. §2675(a); *see also Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) ("No claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim."). Thus, "[t]he FTCA contains a jurisdictional bar that requires a plaintiff to file [their] claim with the appropriate federal agency and receive a final denial by that agency <u>before</u> filing a complaint in federal court." *Banks v. Roberts*, 251 F. App'x 774, 776 (3d Cir. 2007) (unpublished) (emphasis added) (citing 28 U.S.C. §2675(a)); *see also Kucera v. United States*, No. 21-2133, 2022 WL 1112985, at *2 (10th Cir. Apr. 14, 2022) (unpublished) (affirming district court's dismissal of FTCA claim for lack of subject-matter jurisdiction because plaintiff did not demonstrate that "the agency had finally denied that claim before she filed this action"). A plaintiff's "[f]ail[ure]" to fully exhaust their FTCA claim deprives federal courts of subject[-]matter jurisdiction." *Abulkhair v. Bush*, 413 F. App'x 502, 506 (3d Cir. 2011) (unpublished) (citing *White-Squire v. USPS*, 592 F.3d 453, 456–58 (3d Cir. 2010)). Furthermore, this exhaustion requirement cannot be waived. *See Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) ("In light of the clear, mandatory language of the statute, [the] strict construction of the limited waiver of sovereign immunity by the [Government], . . . the requirement that the appropriate federal agency act

on a claim before suit can be brought is jurisdictional and cannot be waived." (citing *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989))).

The plaintiff "must plead administrative exhaustion in an FTCA case." *Guilford v. FCI Williamsburg*, No. 22-cv-1945, 2022 WL 2192945, at *2 (E.D. Pa. June 16, 2022). The plaintiff also "carries the burden of proof to establish presentment of [their] claim to [the agency]." *Medina v. City of Phila.*, 219 F. App'x 169, 172 (3d Cir. 2007) (unpublished); *see also Lincoln Benefit Life Co. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

Here, the Court appears to have subject-matter jurisdiction over Garza-Guerra's FTCA claims insofar as Garza-Guerra affirmatively alleged that he fully exhausted these claims in his original complaint. *See* (Doc. 1 ¶15 ("Plaintiff, through his legal representative, properly submitted a claim under the [FTCA] to the BOP, which was received in August 2023 and subsequently denied, necessitating this action.")). He did not, however, include any such allegation in his amended complaint, or attach a copy of his FTCA claim denial as an exhibit. *See generally* (Doc. 6-1). Nevertheless, because Garza-Guerra is proceeding *pro se* and included the exhaustion

allegation in the original complaint, the Court will proceed as if there is subject-matter jurisdiction over his FTCA claims in this case.

Garza-Guerra's FTCA claims, however, will not move forward because they are barred by collateral estoppel. Although collateral estoppel is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), this Court may raise it in a screening review under Sections 1915A(b) or 1915(e)(2)(B) *sua sponte* when it is clear from the face of the complaint that a claim is precluded. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under §1915 based on an affirmative defense . . . only when the defense is obvious from the face of the complaint and no further factual record is required to be developed." (citation and internal quotation marks omitted); *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017) (unpublished) ("With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint . . . ."); *see also Berkery v. Gudknecht*, 763 F. App'x 288, 289 (3d Cir. 2019) (unpublished) (affirming dismissal of complaint under Section 1915(e)(2)(B) on collateral estoppel grounds). Furthermore, in considering the applicability of collateral estoppel at the statutory screening phase, the Court "may also look beyond the

complaint to public records, including judicial proceedings." *Weinberg*, 699 F. App'x at 120 n.3.

"Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007); *see Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411 (2020) (explaining that "issue preclusion (sometimes called collateral estoppel) . . . precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment" (citations omitted)). Here, the Court must determine whether the denial of Garza-Guerra's Section 2241 petition, which he references in his amended complaint, *see* (Doc. 6-1 ¶34 (citing *Garza-Guerra v. Warden*, No. 3:23-cv-455 (M.D. Pa.), ECF No. 15-1)), precludes his FTCA claims in this case.

"The preclusive effective of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under federal common law, "[a] finding of issue preclusion [(also known as collateral estoppel)] is appropriate when (1) 'the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.'" *Arlington Indus., Inc. v.*

*Bridgeport Fittings, Inc.*, 106 F. Supp. 3d 506, 513–14 (M.D. Pa. 2015) (quoting *Peloro*, 488 F.3d at 175). The Third Circuit has also elaborated on the doctrine of collateral estoppel as follows:

> In its classic form, collateral estoppel also required "mutuality"— i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. *Parklane Hosiery* [*Co. v. Shore*, 439 U.S. 322, ]326–27, 99 S.Ct. 645. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Parklane Hosiery*, 439 U.S. at 329, 99 S.Ct. 645. For defensive collateral estoppel—a form of non-mutual issue preclusion—to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. *See Parklane Hosiery*, 439 U.S. at 328, 332, 99 S.Ct. 645; *Blonder–Tongue Labs.*, 402 U.S. at 331, 333, 91 S.Ct. 1434.

*Peloro*, 488 F.3d at 175.

In this case, the first two elements of the collateral estoppel analysis are satisfied because Garza-Guerra previously litigated the issue of whether he should have been released on September 22, 2022 because FSA ETCs should have been applied to his sentence, and he seeks to relitigate that issue in the present case. Although Garza-Guerra previously presented this issue through a Section 2241 habeas petition and not the FTCA, issue preclusion prevents successive litigation of an issue that was resolved in a prior case "even if the issue recurs in the context of a different claim." *Taylor*,

553 U.S. at 891 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). The third element is also met because the Court denied the Section 2241 petition on the merits and denied his motion for reconsideration. Finally, the fourth element is met because a determination of whether the BOP properly applied FSA ETCs to Garza-Guerra's sentence was essential to the judgment denying his habeas petition. Accordingly, Garza-Guerra's FTCA claims are barred by the doctrine of collateral estoppel.[3] *See, e.g., Day v. U.S. Dep't of Justice*, No. 06-cv-5302, 2007 WL 1321208, at *5–6 (D.N.J. May 2, 2007) (dismissing *pro se* plaintiff's complaint due to, *inter alia*, issue

---

[3] Garza-Guerra makes passing references to due process on two (2) occasions in his amended complaint. *See* (Doc. 6-1 ¶ 26 ("Further, Plaintiff was never accorded due process as required under 8 CFR [sic] §238.1(b)(2)(i), including the service of a Notice of Intent to Seek a Removal Order, a prerequisite for a valid deportation order.); *id.* ¶ 39 ("Defendant lacked any legal justification or documentation complying with due process requirements to detain Plaintiff beyond his scheduled release date at the time the decision was made."). Through these references, Garza-Guerra appears to challenge the validity of the final order of removal, even insofar as he contends that the BOP relied on an invalid final order because it was allegedly entered without him receiving due process. To the extent that Garza-Guerra is attempting to challenge the validity of his final order of removal, this Court lacks subject-matter jurisdiction to consider it. *See* 8 U.S.C. §1252(g) ("Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").

- 22 -

preclusion where plaintiff had filed prior Section 2241 petition raising similar claim).

### 3.    Leave to Amend

Having determined that Garza-Guerra's FTCA claims against the Government are subject to dismissal, the question arises as to whether to grant him leave to file a second amended complaint. Although district courts should generally give leave to amend, they may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In this case, because Garza-Guerra's claims are barred

by collateral estoppel, the Court will dismiss them with prejudice because further amendment would be futile.

## IV.    CONCLUSIONS

For the above reasons, the Court will (1) grant the IFP Application, (2) deny as moot the motions for leave to amend because Garza-Guerra did not require leave of Court to file a first amended complaint, (3) direct the Clerk of Court to docket Garza-Guerra's proposed amended complaint as his amended complaint, (4) dismiss with prejudice the amended complaint, and (5) deny as moot the motion to expedite and for service of the complaint. An appropriate Order follows.

*S/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 18, 2025**
24-740-01

- 24 -